UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RADEK BARNERT,<br><br>        Plaintiff,<br><br>    v.<br><br>HP, INC.,<br><br>        Defendant. | Case No. 21-cv-05199-SVK<br><br>**ORDER GRANTING MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Re: Dkt. Nos. 22, 23, 26, 27 |

Defendant HP, Inc. ("Defendant" or "HP") moves to dismiss Plaintiff Radek Barnert's ("Plaintiff") Complaint (Dkt. 1) pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim upon which relief can be granted, or, in the alternative, Rule 12(f) to strike the nationwide class allegations. Dkt. 22. The Parties have consented to the jurisdiction of a magistrate judge. Dkt. 15; Dkt. 16.

Pursuant to Civil Local Rule 7-1(b), the Court deems the motion to dismiss suitable for determination without oral argument. Having carefully considered the Parties' submissions, the case file, and the relevant law, and for the reasons discussed below, the Court **GRANTS** Defendant's motion to dismiss the Complaint.

I. **BACKGROUND**

This discussion of the background facts is based on the allegations of Plaintiff's Complaint. Plaintiff alleges that HP has a subscription-based program called "Instant Ink" ("Program"), which includes several different plans for a monthly fee based on the subscriber's printing needs. Dkt. 1 ¶¶ 1, 3. For printers enrolled in the Program, HP is able to detect when the printer is running low on ink, at which point, HP ships replacement ink cartridges to the subscriber. *Id.* ¶ 2. Plaintiff alleges that "HP promises consumers that if they enroll their printer

in the Program (and pay the associated flat monthly fee), they will 'never run out' of ink and will receive 'ink the moment [they] need it.'" *Id.* ¶ 1. However, Plaintiff alleges that "Subscribers can only use ink cartridges supplied by HP through the Program, such that they cannot use HP replacement ink cartridges purchased directly from stores." *Id.* ¶ 7. Additionally, Plaintiff alleges that HP "routinely fails to timely provide Subscribers with replacement printer cartridges" and even when HP does provide replacement printer cartridges, "HP's printers commonly display error messages that render them inoperable, even when ink is available." *Id.* ¶¶ 10, 50-51. When subscribers complain, HP claims that it cannot fix the problems and only offers to ship more ink cartridges. *Id.* ¶¶ 12, 52. Plaintiff alleges that as a result, subscribers are unable to use their printers for extended periods of time. *Id.* ¶¶ 11, 53. Further, if subscribers cancel their subscriptions, the ink cartridges HP supplied through the Program no longer function properly, requiring subscribers to purchase replacement ink cartridges from local retailers to continue using their printers. *Id.* ¶¶ 13-14. Plaintiff alleges that HP does not fully and accurately disclose that the supplied ink cartridges would no longer work, stating that subscribers can "change or cancel [their] plan any time, at no extra cost" and if subscribers decide to cancel their subscriptions, they "can go back to using ink cartridges purchased at retail." *Id.* ¶¶ 15-17 (internal quotations and emphasis omitted). As a result, "Subscribers are left with a choice between two undesirable options: (1) canceling their subscriptions and incurring additional costs in connection with purchasing replacement ink cartridges from local retailers, or (2) remaining enrolled in the Program and being subjected to excessive downtimes, error messages, and unending calls/chats with HP technical support." *Id.* ¶ 20. Plaintiff also alleges that HP promises subscribers that they can recycle used printer cartridges through a "prepaid," "hassle-free" recycling program and subscribers can just "drop used cartridges in HP's prepaid envelope and [HP] will handle the rest." *Id.* ¶¶ 5, 56. However, Plaintiff alleges that when subscribers inquire about recycling their ink cartridges, "HP informs them to throw those cartridges away" and fails to provide them with the promised prepaid shipping materials. *Id.* ¶¶ 25, 55-56.

       In July 2020, Plaintiff, a resident of New York, purchased the HP OfficeJet 5260 Wireless All-In-One Inkjet Printer from Best Buy at the Chelsea location at 60 W. 23rd St., New York, NY

1  10010-5283. *Id.* ¶¶ 29, 60-61. A two-year HP Instant Ink subscription was included in the printer
2  cost. *Id.* ¶ 62. Before purchasing the printer, Plaintiff saw and relied on various HP
3  representations on Best Buy's website, including "hassle-free delivery" of ink cartridges "when
4  ink or toner levels are low" before subscribers run out of ink or toner so that subscribers would
5  "never run out" of ink. *Id.* ¶ 63. Plaintiff also saw and relied on HP's representations that prepaid
6  envelopes would be provided for "hassle-free" "prepaid recycling" of used cartridges and
7  cartridges would be sent with less packaging and "only when ink or toner levels are low" to
8  benefit the environment. *Id.* Based on those representations, Plaintiff chose to purchase his
9  printer and the accompanying Program subscription. *Id.* ¶ 64. In April 2021, Plaintiff began
10 experiencing trouble with his printer when an error message stating "Cartridge cannot be used
11 until enrolled to instant ink" appeared on the printer. *Id.* ¶ 65. Plaintiff contacted HP's support
12 through chat and the phone and HP told him that the only way to fix the problem was for HP to
13 send new cartridges. *Id.* ¶ 66. Plaintiff agreed and the replacement cartridges appeared eight days
14 later. *Id.* ¶ 67. While the replacement cartridges worked for a few days, the same error message
15 appeared. *Id.* ¶ 68. Plaintiff contacted HP several more times and each time, HP sent another set
16 of replacement ink cartridges, but the printer still failed to operate properly. *Id.* ¶¶ 69-71. Plaintiff
17 asked an HP representative to cancel his subscription to the Program, but the HP representative
18 said she could not cancel the service. *Id.* ¶¶ 24, 72. Plaintiff also asked HP to accept a return of
19 the printer, but the HP representative refused. *Id.* ¶¶ 24, 73. In May 2021, Plaintiff received a
20 fourth set of cartridges which appeared to resolve the issue, and he was able to resume printing.
21 *Id.* ¶ 77. As a result, Plaintiff was unable to print for approximately 35 days. *Id.* ¶ 78.
22 Additionally, when Plaintiff asked for instructions to recycle the unused and malfunctioning
23 cartridges, the HP representative told him the cartridges were valueless and should be thrown
24 away, failing to provide Plaintiff with prepaid shipping materials to return and recycle the ink
25 cartridges as promised. *Id.* ¶¶ 79-80. Plaintiff chose to ship the ink cartridges for recycling at his
26 own expense. *Id.* ¶ 80.
27 ////
28 ////

Plaintiff brings this action to seek damages and injunctive and other equitable relief as a class action on behalf of himself and the following classes and subclasses:

> Printing Class: All persons and entities in the United States who were subscribed to the HP Instant Ink Program and incurred an interruption in printing service due to an error message, faulty cartridges, or cartridges being out of stock.
>
> The New York Printing Subclass: All persons and entities in New York who were subscribed to the HP Instant Ink Program and incurred an interruption in printing service due to an error message, faulty cartridges, or cartridges being out of stock.
>
> Environmental Class: All persons and entities in the United States who were subscribed to the HP Instant Ink Program but were not provided materials for free recycling.
>
> The New York Environmental Subclass: All persons and entities in New York who were subscribed to the HP Instant Ink Program but were not provided materials for free recycling.

*Id.* ¶ 86.

## II.  REQUEST FOR JUDICIAL NOTICE AND INCORPORATION BY REFERENCE

### A.  Legal Standard

There are two doctrines that allow district courts to consider material outside the pleadings without converting a motion to dismiss into a motion for summary judgment: judicial notice under Federal Rule of Evidence 201 and incorporation by reference. *Khoja v. Orexigen Therapeutics*, Inc., 899 F.3d 988, 998 (9th Cir. 2018), *cert. denied sub nom. Hagan v. Khoja*, — U.S. —, 139 S. Ct. 2615, 204 L. Ed. 2d 264 (2019). "The court may judicially notice a fact that is not subject to reasonable dispute." Fed. R. Evid. 201(b). A fact is "not subject to reasonable dispute" if it "is generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)-(2). However, "[j]ust because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth." *Khoja*, 899 F.3d at 999.

Incorporation by reference is a judicially created doctrine that allows a court to consider certain documents as though they are part of the complaint itself. *Khoja*, 899 F.3d at 1002. "The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Id.* A

4

1    defendant can seek to incorporate a document into the complaint "if the plaintiff refers extensively
2    to the document or the document forms the basis of the plaintiff's claim." *U.S. v. Ritchie*, 342
3    F.3d 903, 908 (9th Cir. 2003) (citations omitted). While the "mere mention" of the existence of a
4    document is insufficient to incorporate a document, it is proper to incorporate a document if the
5    claim "necessarily depended" on them. *Khoja*, 899 F.3d at 1002.

6    After a defendant offers such a document, the district court can treat the document as part
7    of the complaint, and "thus may assume that its contents are true for purposes of a motion to
8    dismiss under Rule 12(b)(6)." *Ritchie*, 342 F.3d at 908. However, "[w]hile this is generally true,
9    it is improper to assume the truth of an incorporated document if such assumptions only serve to
10   dispute facts stated in a well-pleaded complaint." *Khoja*, 899 F.3d at 1003. Indeed, using
11   extrinsic documents to "resolve competing theories against the complaint risks premature
12   dismissals of plausible claims that may turn out to be valid after discovery" and it is "improper to
13   do so only to resolve factual disputes against the plaintiff's well-pled allegations in the
14   complaint." *Id.* at 998, 1014.

**B.    Analysis**

Defendant asks the Court to take judicial notice of the following documents:

> (1) HP Instant Ink's current Terms of Service, which are effective December 2020, available online at https://instantink.hpconnected.com/us/en/terms (Dkt. 23-1 Ex. 1)
>
> (2) HP Instant Ink's Terms of Service in effect on August 4, 2020, which are available online at https://web.archive.org/web/20200804050048/https://instantink.hpconnected.com/us/en/terms by way of the Internet Archive's WayBack Machine (Dkt. 23-1 Ex. 2)
>
> (3) HP Instant Ink's Terms of Service in effect on May 13, 2020, which are available online at https://web.archive.org/web/20200513130713/https://instantink.hpconnected.com/us/en/terms by way of the Internet Archive's WayBack Machine (Dkt. 23-1 Ex. 3)

Dkt. 23.

Defendant asks the Court to take judicial notice of the various Terms of Services, arguing
that they are publicly available webpages and their contents are not subject to reasonable dispute.

5

Dkt. 23 at 3.  Defendant further argues that courts in the Northern District "routinely take judicial notice of terms of services." *Id.*  Additionally, Defendant argues that "District courts in this circuit have routinely taken judicial notice of content from the Internet Archive's Wayback Machine pursuant to Rule 201." *Id.* (internal quotation marks and citation omitted).  Defendant also argues that alternatively, the Court can and should incorporate the three exhibits under the incorporation by reference doctrine because the Complaint repeatedly references the Terms of Service.  *Id.* at 4.

The Court finds that the Terms of Service are referenced extensively throughout the Complaint and form the basis for Plaintiff's claims.  *See, e.g.*, Dkt .1 ¶¶ 18, 64, 81, 101, 107, 109, 114.  Accordingly, Defendant's request to incorporate by reference the various versions of the Terms of Service (Dkt. 23-1) is **GRANTED.**  *See In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 813-14 (N.D. Cal. 2020) (granting Google's request to incorporate by reference the Terms of Service).

### III.     MOTION TO DISMISS OR STRIKE

#### A.     Legal Standard

##### 1.     Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(1)

A defendant may move to dismiss an action for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  Article III standing is a threshold requirement for federal court jurisdiction.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992).  The party seeking standing must show that "(1) he or she has suffered an injury in fact that is concrete and particularized, and actual or imminent; (2) the injury is fairly traceable to the challenged conduct; and (3) the injury is likely to be redressed by a favorable court decision."  *Salmon Spawning & Recovery Alliance v. Gutierrez*, 545 F.3d 1220, 1225 (9th Cir. 2008) (citing *Lujan*, 504 U.S. at 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351).

A party moving to dismiss under Rule 12(b)(1) may make a facial challenge by asserting that "the allegations contained in [the] complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  The Court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party."  *Warth v. Seldin*, 422 U.S. 490, 501, 95 S. Ct. 2197, 45 L. Ed. 2d

343 (1975). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss, we presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (internal quotation marks and citation omitted).

### 2. Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

Under Rule 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. In ruling on a motion to dismiss, the court may consider only "the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice." *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008) (citation omitted). In deciding whether the plaintiff has stated a claim, the court must assume the plaintiff's allegations are true and draw all reasonable inferences in the plaintiff's favor. *Usher v. City of L.A.*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

Courts should freely give leave to amend unless the district court determines that it is clear that the complaint's deficiencies cannot be cured by amendment. *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995). When amendment would be futile, the court may dismiss without leave to amend. *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996).

### B. Analysis

Plaintiff alleges that because HP reneged on its promises to provide ink cartridges so he would "never run out" of ink and provide "prepaid recycling" of used cartridges, he has suffered damages and will likely continue to sustain losses. Dkt. 1 ¶¶ 81-82. Plaintiff further alleges that

7

he and the class members would not have purchased HP printers or enrolled in the Program if they had known that HP would not be able to perform its obligations and promises pursuant to the terms of the Program. *Id.* ¶¶ 27, 83. From these allegations, Plaintiff asserts three claims: (1) breach of contract based on the implied covenant of good faith and fair dealing; (2) violation of New York General Business Law § 349; and (3) violation of the consumer fraud and deceptive trade practice acts of the various states and the District of Columbia.

Defendant contends that the Program's Terms of Service includes a choice of law provision that requires the application of the laws of the fifty states and the District of Columbia to the first and third claims. Dkt. 22 at 11. Further, Defendant asserts that Plaintiff lacks Article III and/or statutory standing to assert claims under the laws of the other 49 states and District of Columbia where he neither resides nor was injured. *Id.* at 9. Defendant also argues that alternatively, even if Plaintiff has standing to assert non-New York claims, the Court should strike those claims under Rule 12(f) because variations in the state laws will "eclipse any common issues of law or fact." *Id.* The Court turns to the arguments below.

### 1. Choice of Law Provision

Federal courts sitting in diversity apply the laws of the forum state when analyzing choice of law provisions. *First Intercontinental Bank v. Ahn*, 798 F.3d 1149, 1153 (9th Cir. 2015). Here, California law regarding choice of law provisions applies because Plaintiff brought suit in the Northern District of California. California has a strong public policy favoring enforcement of choice of law provisions. *Nedlloyd Lines B.V. v. Super. Ct.*, 3 Cal. 4th 459, 465, 11 Cal.Rptr.2d 330, 834 P.2d 1148 (1992). The California Supreme Court stated:

> Briefly restated, the proper approach under Restatement section 187, subdivision (2) is for the court first to determine either: (1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law. If neither of these tests is met, that is the end of the inquiry, and the court need not enforce the parties' choice of law. If, however, either test is met, the court must next determine whether the chosen state's law is contrary to a fundamental policy of California. If there is no such conflict, the court shall enforce the parties' choice of law. If, however, there is a fundamental conflict with California law, the court must then determine whether California has a "materially greater interest than the chosen state in the determination of the particular issue...." (Rest., § 187, subd. (2).) If

8

> California has a materially greater interest than the chosen state, the choice of law shall not be enforced, for the obvious reason that in such circumstance we will decline to enforce a law contrary to this state's fundamental policy.

*Id.* at 466 (emphasis omitted).

"Before proceeding to the *Nedlloyd* test, however, the Court must first determine whether the Terms [of Service] even apply to Plaintiff's claims." *King v. Bumble Trading, Inc.*, 393 F. Supp. 3d 856, 862 (N.D. Cal. 2019). Defendant contends that the Program's Terms of Service's choice of law provision is valid and enforceable and applies to Plaintiff's claims. *Id.* at 11-13. Plaintiff does not address this issue. The relevant provision that was applicable when Plaintiff purchased his printer states:

> Governing Law. Any disputes arising out of or otherwise relating to this Agreement, whether based on contract, tort, fraud, or any other legal theory, shall be governed by the law of the state in which You currently reside without regard to its conflict-of-law principles."

Dkt. 23-1 Ex. 3 at § 11(f).[1] The Court finds that the choice of law provision applies to Plaintiff's first claim for breach of contract based on the implied covenant of good faith and fair dealing. The contract in dispute is the Terms of Service of the Program and the implied covenant of good faith and fair dealing stems from the Terms of Service. *See* Dkt. 1 ¶¶ 100-16. The Court also finds that the choice of law provision applies to Plaintiff's third claim for violation of states' consumer protection statutes, which also relates to the Terms of Service of the Program that is at issue in this matter. Further, Plaintiff seeks injunctive relief requiring HP to comply with its contractual obligations based on the Terms of Service. *See id.* ¶ 143.

As explained above, California courts apply a three-part test set out in Restatement (Second) of Conflict of Laws § 187. *Nedlloyd*, 3 Cal. 4th at 464-67, 11 Cal.Rptr.2d 330, 834 P.2d 1148. Under the first step, HP must demonstrate either a "substantial relationship" or a "reasonable basis" for choosing to be governed by the law of the state in which the subscriber currently resides. *See Nedlloyd*, 3 Cal. 4th at 466, 11 Cal.Rptr.2d 330, 834 P.2d 1148 (citing

---

[1] The choice-of-law provision in the current Terms of Service was effective December 2020. The Court agrees with Defendant that the current provision is materially the same as the choice-of-law provision in effect when Plaintiff purchased his printer. Dkt. 23-1 Ex. 1 at § 11(f).

Rest., § 187(2)). "The 'reasonable basis' test is a 'lower standard' than 'substantial relationship.'" *King*, 393 F. Supp. 3d at 865. Defendant adequately demonstrates that there is a substantial relationship between Plaintiff and the chosen jurisdiction of New York. Dkt. 22 at 14-15.[2] Plaintiff is a resident of New York and the purchase of the HP printer at issue was purchased in New York. *Id.*; Dkt. 1 ¶¶ 29, 60, 74. Additionally, the Court finds that there would be a substantial relationship between each class member and the law of the state in which each class member resides and the transaction took place. Dkt. 22 at 15.

"Next, the Court now considers whether enforcing the choice of law clause would be contrary to a fundamental policy of California." *King*, 393 F. Supp. 3d at 866. If there is no conflict, the Court must enforce the parties' choice of law clause. *Id.* Defendant contends that there is no public policy against applying the law of the state in which the consumer resides. Dkt. 22 at 15. Plaintiff contends that there is a fundamental conflict in the contract's indemnification clause, because it "purports to impose upon Plaintiff liability to HP for attorney's fees if Plaintiff breaches the contract." Dkt. 26 at 12. However, Plaintiff does not provide a citation or reference for the indemnification provision Plaintiff reprints in its opposition.[3] *See id.* Plaintiff has not identified an area of New York law that would be applied in this action that would be contrary to California public policy. *See Nedlloyd Lines B.V.*, 3 Cal. 4th at 465 ("The law of the state chosen by the parties to govern their contractual rights and duties will be applied . . . unless . . . *application of the law of the chosen state* would be contrary to a fundamental policy of [California] . . .") (citing (Rest., § 187, subd. (2)) (emphasis added). Because the Court finds that there is no conflict, HP's choice of law provision applies.

### 2. Standing

"[T]he Court notes at the outset that the threshold question of whether Plaintiffs have standing and the Court has jurisdiction is distinct from the merits of Plaintiffs' claim." *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 796 (N.D. Cal. 2011) (quoting *Maya v. Centex Corp.*, 658

---

[2] Plaintiff does not address this issue.
[3] The Court notes that the Terms of Service agreements include an indemnification clause but it is not the same as the indemnification clause reprinted in Plaintiff's opposition. Dkt. 23-1 Ex. 1 at § 4(g); Ex. 2 at § 4(g); Ex. 3 at § 4(g).

10

F.3d 1060, 1068 (9th Cir. 2011)) (internal quotation marks omitted).  "Rather, the jurisdictional question of standing precedes, and does not require, analysis of the merits."  *Maya*, 658 F.3d at 1068 (quoting *Equity Lifestyle Props., Inc. v. Cnty. of San Luis Obispo*, 548 F.3d 1184, 1189 n.10 (9th Cir.2008)) (internal quotation marks omitted).  "At the same time, it is well established that the actual or threatened injury required by Article III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing."  *Fraley*, 830 F. Supp. 2d at 796 (citing *Warth v. Seldin*, 422 U.S. 490, 500, 95 S.Ct. 2197, 45 L. Ed. 2d 343 (1975)) (internal quotation marks omitted).  Accordingly, "a plaintiff may be able to establish constitutional injury in fact by pleading violation of a right conferred by statute, so long as [he] can allege that the injury [he] suffered was specific to [him]."  *Id.*

Defendant argues that Plaintiff's first claim for breach of contract based on the implied covenant of good faith and fair dealing and third claim for violation of states' consumer protection statutes are both governed by the laws of the fifty states and the District of Columbia based on the choice-of-law provision included in the Program's Terms of Service.  Dkt. 22 at 11.  Accordingly, Defendant contends that Plaintiff does not have Article III standing to pursue those claims for jurisdictions other than New York.  *Id.*  Defendant argues that, alternatively, Plaintiff lacks statutory standing to pursue the third claim as to 43 of the 51 consumer protection statutes at issue.  *Id.*

"Courts in the Ninth Circuit have consistently held that a plaintiff in a putative class action lacks standing to assert claims under the laws of states other than those where the plaintiff resides or was injured."  *Jones v. Micron Technology Inc.*, 400 F. Supp. 3d 897, 908 (N.D. Cal. 2019).  "Claims for relief under the laws of the several states are *separate* claims for relief and . . . require separate proof of standing."  *Stemmelin v. Matterport, Inc.*, No. C 20-04168 WHA, 2020 WL 6544456, at *3 (N.D. Cal. Nov. 7, 2020).  Indeed, "Plaintiff[] must show [he has] standing for each claim [he raises], and Plaintiff[] do[es] not have standing to bring claims under the laws of states where [he has] alleged no injury, residence, or other pertinent connection."  *Jones*, 400 F. Supp. 3d at 909; *see also Razuki v. Nationstar Mortgage*, No. 18-cv-03343-JD, 2020 WL 1478374, at *3 (N.D. Cal. Mar. 26, 2020) ("Consequently, at least one named plaintiff must have

11

Article III standing to bring a claim under the laws of each state included in the alleged multi-state class."). Here, Plaintiff resides in New York and purchased his printer in New York. Dkt. 1 ¶¶ 29, 60, 74. There is no allegation that he was injured by Defendant's alleged conduct in any state other than New York. Further, the Court determines that HP's choice of law provision applies. *See* Section III.B.1.

Plaintiff contends that it is premature to dismiss the non-New York claims. Dkt. 26 at 19. However, "[n]otably, while the Ninth Circuit has yet to weigh in, the majority of courts in this district have held that in a putative class action, claims arising under the laws of states in which no named plaintiff resides should be dismissed for lack of standing at the motion to dismiss stage." *Snarr v. Cento Fine Foods Inc.*, No. 19-cv-02627-HSG, 2019 WL 7050149, at *8 (N.D. Cal. Dec. 23, 2019); *see also Corcoran v. CVS Health Corporation, Inc.*, No. 15-CV-3504 YGR, 2016 WL 4080124, at *2 (N.D. Cal. July 29, 2016) ("In such instances, the consensus among courts in this District . . . is that named plaintiffs lack standing to assert claims based on those states' laws.") (citing cases where courts in this District have determined plaintiff lacks standing to assert certain claims). Although Plaintiff brings claims under the laws of fifty states, here, no plaintiff resides in, or alleges to have suffered an injury in, any of the other forty-nine states or District of Columbia at issue in Defendant's motion. "Putting off until class certification the question of [Plaintiff's] representation of putative class members under *other* states' laws would both permit him to represent a putative class from a state whose members all opt-out following class certification and, more dangerously, permit him to press claims under some state's laws only to find in discovery that *no putative class members ever existed there*." *Stemmelin*, 2020 WL 6544456, at *4. Accordingly, the Court **DISMISSES WITHOUT PREJUDICE** the first and third claims to the extent they are brought under the laws of jurisdictions other than New York.

Additionally, because the Court dismisses without prejudice the first and third claims, the Court need not address the motion to strike the nationwide class allegations pursuant to Rule 12(f) at this time. Accordingly, the Court **DENIES AS MOOT** Defendant's motion to strike.

IV.   **CONCLUSION**

For the reasons stated above, the Court **GRANTS** Defendant's motion to dismiss and

**DENIES AS MOOT** Defendant's motion to strike.  Plaintiff may file an amended complaint in a manner consistent with this order by **January 17, 2022**.

      **SO ORDERED.**

Dated: December 17, 2021

                                                          SUSAN VAN KEULEN
                                                          United States Magistrate Judge